**Ervie GRAY, Plaintiff–Appellant,**

**v.**

**Gary MCCAUGHTRY, Warden, et al., Defendants–Appellees.**

**No. 02–2436.**

United States Court of Appeals, Seventh Circuit.

Submitted June 18, 2003.*

Decided June 25, 2003.

Rehearing Denied July 22, 2003.

Before MANION, ROVNER, and DIANE P. WOOD, Circuit Judges.

**ORDER**

Wisconsin prisoner Ervie Gray claims in a suit under 42 U.S.C. § 1983 that his

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

complaints about a back condition met with deliberate indifference and brutality from prison officials. As part of that suit Gray sought a preliminary injunction to compel desired medical treatment and prohibit further physical and mental abuse by prison officials for his professed inability to walk. The district court declined to issue the injunction, and Gray brought this interlocutory appeal under 28 U.S.C. § 1292(a)(1). We affirm.

Gray maintains that he has been a paraplegic since March 1996 because of a "deviated spinal column" and "separated bone disk" in his back together with other "internal maladies." He asserts that his requests for x-rays, orthopedic therapy, and a wheelchair were repeatedly denied, though he concedes that prison staff offered him physical examinations. He also admits that x-rays of his spine eventually were taken in December 2001, and those x-rays showed no abnormalities. Gray, however, believes that the x-rays were taken improperly. He further alleges that on numerous occasions during the past five years prison guards mentally and physically abused him when he failed to comply with their orders to stand or walk, e.g., by punching and kicking him, dragging him, denying him food, strapping him to a medieval-like "escort" chair, and joking about his condition. Gray also makes fantastic allegations that prison officials are actually causing his condition by lacing his food with diseases, human waste, "black ash cancerous bacteria," and other toxins, and using him for bizarre biological experiments.

Gray filed his § 1983 suit in January 2002, claiming deliberate indifference to his medical needs and alleging numerous instances of excessive force under the Eighth Amendment. His pro se complaint named as defendants the secretary and director of the state department of correc-

tions, Jon Litscher and Dick Verhagen respectively; the director of correctional health services, Sharon Zunker; and his present and former custodians, Gary McCaughtry, the warden of the Waupun Correctional Institution, Jeffrey Endicott, the warden of Columbia Correctional Institution, and Gerald Berge, the warden at the Wisconsin Secure Program Facility ("WSPF"). He also purported to sue several unknown prison officials whom he referred to as "John Doe" and "Jane Doe." Along with his complaint, Gray filed several motions for injunctive relief seeking x-rays and blood tests to be performed by an independent, court-appointed doctor who would remain unknown to the defendants; access to a wheelchair; and a cessation of the abuse by prison officials.

The district court reviewed Gray's complaint pursuant to its screening function under 28 U.S.C. § 1915A and, on May 15, 2002, allowed Gray to proceed *in forma pauperis* against McCaughtry, Endicott, and Berge on three of his claims of excessive force. The district court, however, dismissed Gray's claim of deliberate indifference to his serious medical needs for failure to state a claim, *see id.* § 1915A(a), since Gray's own allegations and attached documents show that he merely disagreed with the treatment offered him. The court further reasoned that "a review of the complaint shows that the plaintiff has not identified any defendant who was personally involved in" the claimed denial of medical care. In the same May 15 order, the district court denied Gray's requests for preliminary injunctive relief, concluding that in view of the dismissal Gray plainly could not make the threshold showing of a likelihood of success on the merits of his deliberate indifference claim. The court did not specifically address Gray's request for an order to end the alleged brutality by prison officials on account of his disability.

Gray then filed this interlocutory appeal from the district court's denial of preliminary injunctive relief. Gray spends a large part of his brief, however, challenging the district court's decision to dismiss all but three of his claims under § 1915A. But as we explained to Gray in an interim order, this appeal is limited to a review of the district court's May 15, 2002, ruling denying injunctive relief, as the district court has not yet entered final judgment. Thus, we consider only Gray's arguments that are directed at that ruling.

In order to obtain a preliminary injunction, Gray needed to prove to the district court that (1) his underlying case is likely to succeed on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm if the injunction is not granted. *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir.2003). Even if these three conditions are met, the court still must balance the harm to Gray if the injunction is not issued against the harm to the state if it is issued. *Id.* Focusing on the first prong, the district court determined that Gray's case is not likely to succeed on the merits. The court reasoned as follows:

> While the court is not unsympathetic to the plaintiff's concerns, the relief sought by the plaintiff relates to his claims of deliberate indifference to his serious medical needs. The plaintiff has not identified in his complaint any defendant who was personally involved in these claims. Therefore, the plaintiff has not been allowed to proceed on such claims. As such, the injunctive relief sought by the plaintiff relates to claims which are not before the court. As a result, the plaintiff cannot make the threshold showing that he has a likelihood of success on the merits.

Although his pro se brief is somewhat difficult to parse, Gray does vigorously dispute the district court's conclusion that his deliberate indifference claim would not succeed because he failed to sufficiently identify persons who were personally involved in denying him proper medical treatment. We agree with Gray that the district court's reliance on this ground for denying injunctive relief was suspect. The district court was correct that for Gray to succeed on his claim for *money damages* under § 1983, he must show that the state officials named as defendants were personally involved in denying the necessary treatment; he cannot simply attribute constitutional violations to them by the doctrine of respondeat superior. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir.1996). Gray contends that his complaint, read liberally, implicated the named defendants in his deliberate indifference claim and sufficiently identified other individuals by their occupation, i.e., guards, medical and clinical staff, or by referring to them as John or Jane Does. We are not persuaded by Gray's contention based upon our review of the complaint, even though pro se complaints like Gray's are to be liberally construed, and where a pro se prisoner has alleged serious deprivations, he should be allowed a reasonable opportunity to identify the correct defendants and amend his complaint. *See Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir.1996).

Gray's complaint, however, does at least name the proper defendants for purposes of the injunctive relief requested here—namely, the provision of medical care and cessation of brutal treatment. Official-capacity suits against state officials for injunctive relief are permitted by 42 U.S.C. § 1983. *See Power v. Summers*, 226 F.3d 815, 819 (7th Cir.2000) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)); *Alston v. DeBruyn*, 13 F.3d 1036,

1038 n. 1 (7th Cir.1994). The proper defendant in such a suit would be the state officials responsible for seeing that the order is carried out–here, likely the secretary of the department of corrections, the director of correctional health services, and the warden of the prison at which Gray presently is confined. *See, e.g., Feit v. Ward,* 886 F.2d 848, 858 (7th Cir.1989) (proper defendants for purposes of injunctive relief were supervisory officials of government agency). Gray's complaint indeed names those officials.

■ Nevertheless, we cannot say that the district court erred in denying the injunction against this factual backdrop. To establish an Eighth Amendment violation, Gray must prove that he had a serious medical need and that the defendants acted with the "deliberate indifference" that transforms ordinary instances of malpractice into constitutional violations. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir. 2001). As the district court correctly noted, "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin,* 236 F.3d at 898. Gray's own allegations and the documents attached to his complaint suggest that a difference of opinion is all that is at issue here. Gray attached two December 2001 memoranda from his Unit Manager at the WSPF, Officer Hompe, that reflect that Gray had been offered medical examinations on several occasions but refused them. Gray admits that he was repeatedly offered physical examinations in lieu of x-rays, but says he refused them because he did not trust the medical staff. Thus, his claim that his needs were met with deliberate indifference has little chance of success. Moreover, Gray has now received his x-ray, although he disputes the results. To dem-

onstrate the need for injunctive relief, however, Gray must show a real, continuing threat of harm. *See Knox v. McGinnis,* 998 F.2d 1405, 1413 (7th Cir.1993). Because Gray has not shown that prison officials likely were deliberately indifferent to his serious medical needs, much less that they continue to be, injunctive relief was not warranted.

■ Gray also argues that the district court erred in refusing to order the defendants to stop prison guards from abusing him on account of his professed inability to walk. In this regard he points out that the district court allowed him to proceed *in forma pauperis* on three of his claims of excessive force. But the district court's finding that he stated three claims of excessive force sufficient to allow him to proceed IFP does not equate to a finding that those claims are likely to succeed or that future harm was imminent. Notably, the district court also concluded that Gray failed to state a claim with respect to numerous other alleged instances of abuse, and the three viable claims are based on incidents spaced years apart. Further, although the district court could have been more explicit, it is evident from the court's order that it understood, not unjustly we think, that Gray's request for injunctive relief concerning the alleged abuse was tied to his deliberate indifference claim. Indeed, Gray maintains that the brutality stems from what he describes as the defendants' "medieval cruel life threatening draconian antics and tactics to bring about a medical miracle to cure plaintiff's disability." Given the dispute regarding the existence of this disability, we cannot say that the district court erred in interpreting Gray's request as one for an order that could, if Gray had his way, prevent prison officials from legitimately disciplining him for failing to stand or walk when ordered. Nor can we say that the district court

erred in denying Gray's request because the requisite balancing of harms favors the state. In balancing the harms, a court must "weigh the error of denying a preliminary injunction to the party who would win the case on the merits against the error of granting an injunction to the party who would lose." *See Foodcomm*, 328 F.3d at 305. Under the circumstances here the district court was entitled to conclude that the costs to the state from erroneously ordering the requested relief outweighed any potential harm to Gray.

For these reasons, the district court properly denied injunctive relief.

AFFIRMED